IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 5, 2004 Session

## STATE OF TENNESSEE v. GARY LEE MARISE

**Appeal from the Circuit Court for Carroll County**
**No. 02CR-1964     C. Creed McGinley, Judge**

---

**No. W2003-02434-CCA-R3-CD  - Filed March 14, 2005**

---

The Appellant, Gary Lee Marise, was convicted by a Carroll County jury of possession of anhydrous ammonia with the intent to manufacture a controlled substance, a class E felony, and the misdemeanor offenses of possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia.  For his conviction for the possession of anhydrous ammonia, Marise received a two-year sentence, with service of ninety days confinement, followed by supervised probation.  On appeal, Marise raises two issues for our review: (1) whether the evidence is sufficient to support the convictions and (2) whether his sentence for possession of anhydrous ammonia is excessive.  After review of the record, we affirm the judgments of conviction and resulting felony sentence.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Benjamin S. Dempsey, Huntingdon, Tennessee, for the Appellant, Gary Lee Marise.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Robert "Gus" Radford, District Attorney General; and Eleanor Cahill, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

On March 19, 2002, Deputy Michael Darnell of the Carroll County Sheriff's Department, while on routine patrol, observed a 1983 Plymouth partially parked in the roadway.  Two men, later identified as the Appellant and co-defendant John Hamblen, were standing beside the open trunk.  As Darnell approached the vehicle, the two hastily shut the trunk and returned to the car.  The Appellant occupied the driver's seat and Hamblen the passenger's seat.  Upon reaching the car,

Darnell saw open containers of beer in the vehicle and smelled alcohol. The Appellant and Hamblen were then placed in Darnell's patrol car. Darnell then found a rolled marijuana cigarette and a candy tin containing two small packets of methamphetamine on the ground adjacent to the passenger side of the car. Inside the car Darnell found marijuana in the pocket of a blue-jean jacket. Neither the Appellant nor the co-defendant claimed ownership of the jacket.

Additionally, Darnell smelled anhydrous ammonia, an odor he was familiar with, coming from the trunk of the vehicle. Knowing that the chemical was used in the production of methamphetamine, Darnell asked the Appellant for permission to search the car, which was refused by the Appellant. After obtaining a search warrant, Darnell discovered an aluminum canister of the type often used to transport anhydrous ammonia stolen from farms. Due to the volatile and dangerous nature of anhydrous ammonia, the canister was not opened. The deputy testified that he could smell the odor of anhydrous ammonia coming from the canister, which he described as being full. After his arrest, the Appellant was processed at the local jail. During his processing, a tin-foil slide, commonly used to ingest methamphetamine, was found in his wallet. The foil had a burned spot and a small amount of residue on it.

On September 3, 2002, a Carroll County grand jury returned a four-count indictment against the Appellant charging him with: (1) possession of anhydrous ammonia, a class E felony; (2) possession of methamphetamine, a class A misdemeanor; (3) possession of marijuana, a class A misdemeanor; and (4) possession of drug paraphernalia, a class A misdemeanor. After a jury trial, the Appellant was convicted as indicted on all counts. Following a sentencing hearing, the Appellant was sentenced to two years for the possession of anhydrous ammonia with intent to manufacture a controlled substance. The trial court ordered that the Appellant serve ninety days of the sentence in confinement, followed by supervised probation. Additionally, the court sentenced the Appellant to terms of eleven months and twenty-nine days, suspended after the service of thirty days, for the three remaining misdemeanor convictions. All sentences were ordered to be served concurrently. The trial court subsequently denied the Appellant's motion for new trial on September 8, 2003, with this appeal following.

**Analysis**

## I. Sufficiency of the Evidence

On appeal, the Appellant challenges the sufficiency of the evidence with regard to each of his convictions.[1] Specifically, he asserts that all the evidence presented against him was entirely circumstantial in nature and failed to "exclude every other reasonable hypothesis save the guilt of the [Appellant]."

---

[1]We are first constrained to note that the Appellant's brief fails to comply with the requirements of Rule 27, Tenn. R. App. P. In his brief, the Appellant raises thirty issues in his statement of the issues. The majority of the issues presented relate to the arguments that (1) the evidence is insufficient to support the respective convictions or (2) his sentence for possession of anhydrous ammonia is excessive. The remaining issues, which include denial of all pretrial and trial motions, are waived because the record is either incomplete to permit review, no reference to the record is made, no statement of fact relevant to the issue is made, or no supporting argument is made. Tenn. R. App. P. 24(a), 27(a)(1), (6), (7).

In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). As in the case of direct evidence, the weight to be given circumstantial evidence and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958) (citations omitted).

The Appellant was convicted of possession of methamphetamine and possession of marijuana in violation of Tennessee Code Annotated section 39-17-418(a) (2003), which provides in pertinent part that it "is an offense for a person to knowingly possess . . . a controlled substance. . . ." Additionally, the Appellant was convicted of possession of drug paraphernalia in violation of Tennessee Code Annotated section 39-17-425(a)(1) (2003), which requires that the paraphernalia be possessed for drug use or drug activity. Lastly, the Appellant was convicted of possession of anhydrous ammonia in violation of Tennessee Code Annotated section 39-17-433(a)(1) (2003), which states that it "is an offense for a person to possess, whether acquired through theft or other means, anhydrous ammonia, . . . with the intent to . . . [u]se such anhydrous ammonia in the manufacture of a controlled substance."

On appeal, the Appellant specifically challenges the element of possession with regard to each conviction. He argues that the circumstantial evidence presented was insufficient to establish his constructive possession of the drugs, paraphernalia, and anhydrous ammonia. The Appellant generally argues that the proof is insufficient to establish his guilt because (1) all of the physical evidence was found in the immediate proximity of the co-defendant Hamblen, *i.e.*, on the passenger side of the car, (2) Hamblen testified at the Appellant's trial that the drugs and contraband were his and not the Appellant's, and (3) Hamblen pled guilty to possession of the methamphetamine, marijuana, and anhydrous ammonia, for which the Appellant is charged. The co-defendant also testified that the blue-jean jacket found in the car was his and that the marijuana found in the jacket belonged to him. Hamblen explained that the car had stopped on the road because he needed to use the "bathroom." He then testified that while he was outside the car, he saw the "tank on the ground . . . and [he] popped the trunk open and stuck it in there." He stated that he never smelled anything coming from the canister. In rebuttal, the State called Investigator Dickinson with the Carroll County Sheriff's Department. Dickinson, who is a narcotics investigator, testified that he saw the canister after it was removed by officers from the trunk of the Appellant's car and that it was difficult to place an evidence tag on the canister because the smell of anhydrous ammonia was so strong.

Tennessee courts have recognized that "possession" may be either actual or constructive. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). Constructive possession requires proof that a person had "the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others." *Id*. (quoting *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App., 1997)). In essence, constructive possession is the ability to reduce an object to actual possession. *State v. Brown*, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995). Moreover, possession may be sole or jointly with others. *State v. Copeland*, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). Obviously, proof that the accused had ownership or control over the property where contraband is kept may help resolve the question of constructive possession because it gives rise to an inference of knowledge and possession of the contraband. *Brown*, 915 S.W.2d at 7-8; *State v. Christopher Demotto Linsey*, No. M2003-02420-CCA-R3-CD (Tenn. Crim. App. at Nashville, Sept. 22, 2004). Nonetheless, ownership and control do not mandate conviction. Moreover, it is well-established that a person's mere presence in an area where drugs are discovered is not, standing alone, sufficient to establish that the person possessed the drugs. *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). "[M]ere association with a person who does in fact control the drugs or the property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs." *Brown*, 915 S.W.2d at 8.

With regard to the Appellant's conviction for possession of drug paraphernalia, we find the evidence more than sufficient. The aluminum or tin-foil slide was found in the Appellant's wallet during the jail booking process, thus establishing actual possession. Additionally, testimony was offered that tin-foil slides are commonly used in the ingestion of methamphetamine and that a burnt residue appearing to be methamphetamine was on the foil, which was consistent with drug use.

With regard to the Appellant's convictions for possession of methamphetamine, marijuana, and anhydrous ammonia, we find the evidence sufficient to support the convictions based upon a theory of joint constructive possession. While the co-defendant testified that the drugs belonged to him and not the Appellant, the jury is not obligated to accept the co-defendant's explanation. Because the jury is the arbiter of credibility, they may reject any or all of a witness' testimony. *Pappas*, 754 S.W.2d at 623. Clearly, the co-defendant placed his credibility at issue by testifying that he found the canister under some leaves at the exact spot where the car stopped, that he never smelled anything coming from the canister, and that he pled guilty to possession of anhydrous ammonia although he did not know the canister contained anhydrous ammonia. Taken in the light most favorable to the State, the evidence established that two packets of methamphetamine were found in a candy tin outside the passenger side of the car, the marijuana was found in the pocket of a jacket located in the middle of the front seat of the car, and the anhydrous ammonia was found in the trunk. Also found in the trunk was Coleman lantern fluid and rubber gloves, which Darnell testified are items used in the manufacture of methamphetamine. He explained that anhydrous ammonia will burn a person's skin and that rubber gloves are a necessary protection. The record contains substantial proof that the Appellant was in physical control of the vehicle despite his lack of ownership. This court has held "that a defendant's possession of contraband may be inferred from a defendant's ownership or control over a vehicle in which the contraband is secreted." *State v. James A. Jackson*, No. M1998-00035-CCA-R3-CD (Tenn. Crim. App. at Nashville, May 5, 2000).

Additionally, Deputy Darnell testified that, at the time of their arrest, neither of the two men claimed the blue-jean jacket accessible to both men in the car. While the methamphetamine was found outside the car along with a partially smoked marijuana cigarette, the testimony presented indicated that the drugs had just been placed outside because they had "fresh, damp rain on them" but "weren't soaking wet." The Appellant also had a tin-foil slide used to ingest methamphetamine in his wallet which had the presence of drug residue. Moreover, Darnell testified that when he was approaching the scene, both the Appellant and the co-defendant were standing at the rear of the car looking into the trunk where the anhydrous ammonia was located. We conclude this evidence, though circumstantial, is sufficient to "unerringly point" towards the Appellant's joint possession of the contraband. The evidence presented established more than "mere presence" near the drugs or "mere association" with the person controlling the drugs.

Next, with regard to the conviction for possession of anhydrous ammonia with the intent to manufacture a controlled substance, the Appellant also challenges the conviction based upon the fact that the State did not establish that the substance contained in the canister was in fact anhydrous ammonia. While Deputy Darnell testified that he was familiar with the distinctive smell of anhydrous ammonia and that he smelled that distinctive odor coming from the canister found in the trunk of the car, no testing was done on the substance due to its dangerous nature. Moreover, while Darnell testified that the canister was full when he found it in the trunk of the vehicle, when introduced at trial, the contents had dissipated.

For purposes of Tennessee Code Annotated section 39-17-433(a) (2003), anhydrous ammonia is defined as follows:

> anhydrous ammonia contains eighty-two percent (82%) nitrogen. At atmospheric pressure, ammonia is a gas which exists as a liquid below minus twenty-eight degrees Fahrenheit . . . , and boils at this temperature. In commerce, ammonia is compressed to a liquid and stored under pressure. The gauge pressure is seventy-five pounds . . . per square inch at fifty degrees Fahrenheit . . . , and one hundred ninety-seven pounds . . . per square inch at one hundred degrees Fahrenheit. . . . The pressures exerted by anhydrous ammonia are dangerous unless the proper safety devices are installed in the equipment and care is used in handling.

In his argument, the Appellant offers no more than the bare assertion that "[t]here was no credible proof of anhydrous or the chemical content of the can." The State, relying upon *State v. Anthony Bynum*, No. W2001-00111-CCA-R3-CD (Tenn. Crim. App. at Jackson, Dec. 31, 2001), argues that "scientific proof of the chemical composition of a controlled substance is not required for positive identification and that an officer experienced in narcotics investigation and detection may provide sufficient foundation for admission of testimony identifying a substance." We would agree that a panel of this court in *Bynum* concluded that laboratory tests are not required to establish the nature of the substance. However, in full context, the opinion also concluded that "the olfactory observations of the officers may not be enough, standing alone, to convict" a defendant of possession of anhydrous ammonia.

The record establishes that Deputy Darnell had been a Carroll County Deputy for five years. Prior to this employment, he served as the police chief of Hollow Rock for five years and as a military policeman for twenty-three years. Darnell testified that he had completed training at the Law Enforcement Training Academy, received training through the Twenty-fourth Judicial Drug Task Force, completed yearly in-service training, and had experience in the investigation and prosecution of drug offenses. Darnell testified that he was familiar with anhydrous ammonia, as he had used it while growing up on a farm and then dealt with it in law enforcement. Additionally, Darnell's testimony reflects general knowledge of drug manufacturing activity, including the primary precursors of methamphetamine, the use of anhydrous ammonia in the "cold cook" method of manufacturing methamphetamine, various common drug paraphernalia and their uses, and familiarity with types of canisters which are commonly used in the drug trade to transport and store anhydrous ammonia. He further explained that the canister seized in this case was a "Coca-Cola canister used in the restaurant business, [i]t holds about four and three-quarter pounds of Coca-Cola." Darnell testified that this type of canister is preferred to a propane tank because it is aluminum with stainless steel fittings which do not deteriorate like propane brass fittings.

After review of the record, we conclude that Darnell's special training and experience demonstrates a particularized knowledge of the manufacturing of methamphetamine. Accordingly, we conclude that Deputy Darnell was qualified to express his opinion with regard to the presence of anhydrous ammonia.[2] No objection was entered with regard to this testimony. Moreover, this opinion is supported by Deputy Dickson's testimony that he smelled anhydrous ammonia being emitted from the canister. Based upon the Appellant's possession of anhydrous ammonia, the presence of lantern fluid and rubber gloves used in the manufacturing process, and the presence of the finished product, methamphetamine, we conclude that the proof is sufficient to support the Appellant's conviction for possession of anhydrous ammonia for purposes of manufacturing methamphetamine.

## II. Sentencing

Next, the Appellant challenges the length and manner of service of his sentence stemming from his Class E felony conviction. When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned

---

[2]Other jurisdictions have taken various approaches to the proper method of identifying controlled substances or drug precursors with distinctive odors. One such method is a "plain smell test." The basis for this method of identification is that the odor is very distinctive and can be detected by trained and experienced law enforcement personnel. *See Kenner v. State*, 703 N.E.2d 1122 (Ind. Ct. App. 1999) (distinctive smell of marijuana); *see also Fulcher v. Commonwealth,*, 149 S.W.3d 363 (Ky. 2004) (distinctive smell of anhydrous ammonia). Other states require additional objective indicia of proof of the nature of the substance other than a law enforcement officer's opinion that the substance is anhydrous ammonia. *Pollock v. State*, 145 S.W.3d 786 (Tx. Ct. App. 2004) (statute requiring a properly administered field test or a laboratory test); *State v. Domennig*, 662 N.E.2d 370 (Iowa Ct. App. 2003) (requiring a litmus type test on the container in addition to detection of smell).

upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169. When conducting a *de novo* review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the Appellant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2003); *Ashby*, 823 S.W.2d at 168.

Following a sentencing hearing, the trial court imposed a two-year sentence, suspending all of the sentence with the exception of ninety days which was ordered to be served in confinement. As a Range I offender convicted of a Class E felony, the Appellant's sentencing range was one to two years. *See* Tenn. Code Ann. § 40-35-112(a)(5) (2003). The trial court enhanced the Appellant's sentence by one year based upon the application of enhancement factor (2), previous history of criminal convictions. The sentencing record reflects that the forty-three-year-old Appellant has seven prior misdemeanor convictions, including convictions for DUI, drug possession, and public intoxication. The trial court gave great weight to a possession of cocaine drug conviction which occurred only a few weeks prior to the present offense. The weight to be assigned to the appropriate enhancement and mitigating factors falls within the sound discretion of the trial court so long as that court complies with the purposes and principles of the 1989 Sentencing Act and its findings are supported by the record. *State v. Boggs*, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). Here the record supports enhancement from one to two years.

The Appellant also contends that the trial court erred in denying total probation or a non-incarcerative sentence. As noted, the Appellant's sentence was suspended with the exception of ninety days. Although a defendant may be presumed a favorable candidate for alternative sentencing, the defendant has the burden of establishing suitability for total probation. Tenn. Code Ann. § 40-35-303(b) (2003); *Boggs*, 932 S.W.2d at 477. The Appellant's prior history of drug convictions, although not substantial, supports the trial court's decision to impose a term of confinement to affect "shock-probation." We conclude that the sentence of split confinement both serves the ends of justice and fulfills the rehabilitative needs of the Appellant.

Although not raised as an issue, we note at this juncture the recent United States Supreme Court decision in *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004), clarifying and extending its decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000). The *Blakely* court held that any fact that increases a sentence beyond the "relevant statutory maximum," defined as the maximum sentence that a judge may impose without making any additional findings of fact, must be submitted and proved to the jury beyond a reasonable doubt or admitted by the defendant. *Blakely*, 542 U.S. at ___, 124 S. Ct. at 2536-37. Thus, adherence to *Blakely* requires that any enhancement factors, other than prior criminal history, can be applied only if found by a jury or admitted by the defendant. *Id.* This holding was reaffirmed in *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738, 769 (2005).

At the sentencing hearing, trial counsel, after consultation with the Appellant, conceded the accuracy of the pre-sentence report, which included the Appellant's prior criminal convictions. On appeal, the Appellant does not dispute the existence of prior convictions. Because sentencing enhancement based upon prior criminal history is not implicated under *Blakely*, no *Blakely/Booker* review is necessitated.

## CONCLUSION

Based upon the foregoing, we conclude that the evidence is legally sufficient to sustain the Appellant's convictions for felony possession of anhydrous ammonia with the intent to manufacture a controlled substance and the misdemeanor possessions of methamphetamine, marijuana, and drug paraphernalia. Moreover, we conclude that the sentence imposed by the trial court for felony possession of anhydrous ammonia is justified by the sentencing record. Accordingly, the judgments of conviction and sentence are affirmed.

_____
DAVID G. HAYES, JUDGE